**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MORGAN FINEK and DATREONI O'NEAL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TARGET CORPORATION,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Morgan Finek and Datreoni O'Neal (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This nationwide and state action seeks to remedy the deceptive and misleading business practices of Target Corporation (hereinafter "Target" or "Defendant") with respect to the manufacturing, marketing, and sale of Defendant's Up&Up™ branded Fragrance Free and Fresh Cucumber Scented baby wipes products throughout the United States (hereinafter the "Products"[1]).

[1] The Products at issue are: 1) Up & Up Fragrance Free Baby Wipes 20, 72, 216, 800, 1200 Count with a manufacturing date code of November 07, 2025 (071125X/XX) to May 5, 2026 (050526X/XXX) and expiration dates between May 10, 2028 (100528) through November 5, 2028 (051128). 2) Up & Up Fresh Cucumber Scented Baby Wipes 72, 216, 800 Count with a manufacturing code of December 29, 2025 (291225X/XX) to December 30, 2025 (301225X/XX) and expiration dates between June 29, 2028 (290628) through June 30, 2028 (300628). Subject to further discovery, Plaintiffs reserve the right to amend the Products at issue to include any other baby wipes products that suffer from the same mislabeling.

2. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiffs, by omitting and not disclosing to consumers on its packaging that the Products are contaminated with *Burkholderia cepacia complex* ("*B. cepacia*") and *Burkholderia gladioli* ("*B. gladioli*").

3. As described in further detail below, the Products contain *B. cepacia* and *B. gladioli* which could lead to serious and life-threatening infections. Per the FDA:

> Use of products contaminated with *Burkholderia cepacia complex* and *Burkholderia gladioi* may result in serious and life-threatening infections. The products are predominantly used on newborns, infants, and young children, who are particularly vulnerable to opportunistic infection due to their immature immune systems. In healthy individuals, use of the product on skin with minor lesions will more likely result in local infections, whereas in immunocompromised individuals, newborns, infants and young children, the infection is more likely to spread into the bloodstream, potentially leading to life-threatening sepsis or pneumonia.[2]

4. Plaintiffs and those similarly situated (hereinafter "Class Members") certainly expect that the baby wipes products they purchase will not contain, or risk containing, any knowingly harmful substances that cause severe disease and even be life threatening.

5. Unfortunately for consumers, including Plaintiffs, the baby wipes Products they purchased contained *B. cepacia* and *B. gladioli*.

6. Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain, or risk containing, *B. cepacia and B. gladioli*. Knowing of the presence of *B. cepacia* and *B. gladioli* is material to reasonable consumers. The presence of *B. cepacia* and *B. gladioli* was solely within the possession of Defendant, and consumers could only obtain such information by conducting and by sending the products off to a laboratory for extensive

[2] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/target-recalls-fragrance-free-and-fresh-cucumber-scented-baby-wipes-due-potential-microbial

testing. This omission leads a reasonable consumer to believe they are not purchasing a product with known bacteria such as *B. cepacia and B. gladioli* when in fact they are purchasing a product that is indeed contaminated with the dangerous bacteria *B. cepacia and B. gladioli*.

7. A representative example of Defendant's lack of disclosure on the Products is depicted below:






8. Consumers like Plaintiffs trust manufacturers like Defendant to sell products that are safe and free from harmful known substances, including *B. cepacia and B. gladioli*.

9. Plaintiffs and other Class Members certainly expect that the baby products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

10. Unfortunately for consumers, including Plaintiffs, the baby wipes Products they purchased contained, or were at risk of containing, *B. cepacia and B. gladioli*.

11. While Defendant issued a recall of the Products on June 4, 2026 (the "Recall"), this Recall has not been effective. The recall announcement instructs consumers who purchased the Products to stop using them immediately. But, the Recall is purposely designed to prevent consumers from getting a refund for the contaminated and recalled Products.

12. Defendant's own recall and other testing confirmed and demonstrated the presence of the dangerous bacteria *B. cepacia* and *B. gladioli* in Plaintiffs' products.

**Defendant's Recall is Insufficient**

13. Defendant issued a recall of certain lots of its Products on June 04, 2026.[3]

14. The Products were recalled, and consumers were instructed to "immediately stop using the recalled products". Hence, the baby wipes are unreasonably dangerous, and unsuitable for one of their principal and intended purposes.

15. The Recall provides that consumers with questions or refund requests are directed to return the Products to any Target store or to contact Target guest relations.

16. Defendant is well aware that any consumer who was made aware of the recall would be predisposed to throwing the Products away, and Defendant leans into this predisposition

[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/target-recalls-fragrance-free-and-fresh-cucumber-scented-baby-wipes-due-potential-microbial#recall-announcement

by directing consumers to immediately stop using the recalled Products. Defendant is also aware that consumers shop in multiple locations and may or may not purchase the Products at the same location each time. Also, most consumers do not maintain receipts and therefore cannot obtain a refund at the purchase location for the recalled Products.

17. Accordingly, Defendant's recall is designed to minimize Defendant's own liability, to reach very few people, and to benefit very few of the consumers who purchased the Products.

18. The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

19. Defendant is using a marketing and advertising campaign that omits from the packaging that the Products contain *B. cepacia* and *B. gladioli*. This omission leads a reasonable consumer to believe they are not purchasing a product that contains harmful known bacteria, including *B. cepacia* and *B. gladioli*, when in fact they are purchasing a product contaminated with *B. cepacia* and *B. gladioli*.

20. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing products that are safe for use and do not contain any harmful ingredients. Indeed, consumers expect the packaging and labels to accurately disclose the presence of such bacteria within the Products. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, *B. cepacia* and *B. gladioli.*

21. Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *B. cepacia* and *B. gladioli*, which is dangerous to one's health and well-being. Nevertheless, Defendant does not list or mention *B.*

*cepacia* and *B. gladioli* anywhere on the Products' packaging or labeling.

22. Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products was material to Plaintiffs and Class Members. Consequently, Plaintiffs and Class Members lost the entire benefit of their bargain when what they received was a baby product contaminated with *B. cepacia* and *B. gladioli* that is harmful to baby, infants, toddlers and consumers' health.

23. That is because Defendant's Products containing, or at risk of containing *B. cepacia* and *B. gladioli*, have no value, or at the very least, Defendant was able to charge significantly more for the Products than it would have had it not omitted the fact that the Products contain—or possibly contain— *B. cepacia* and *B. gladioli*.

24. As set forth below, Defendant's Products are in no way safe for human use and are entirely worthless.

25. Alternatively, Plaintiffs and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels. Given that Plaintiffs and Class Members paid a premium for the Products, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

26. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, Illinois Consumer Fraud Act 815 Ill. Comp. Stat. 505/1, *et seq,* and Illinois' Uniform Deceptive Trade Practices Act. 815 Ill. Comp. Stat. 510/2 and resulted in unjust enrichment to Defendant. Defendant also breached and continues to breach its warranties regarding the Products.

27. Plaintiffs bring this action against Defendant on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations period (the

"Class Period").

## FACTUAL BACKGROUND

28. Target is a big box general merchandise retailer of consumer goods, which includes baby products. Target sells national brand products and its own private label products.

29. Target's baby wipes Products are sold under its private label known as "Up & Up". Up & Up is a registered trademark of Target Brands, Inc. Up & Up was introduced in 2009 and is one of Target's 45 private labels (or "owned brands")[4]. Target describes Up & Up as "an everyday essentials brand that offers high quality, affordable products".[5] Up & Up makes or white labels over 2,000 products, including well known products, such as the Up & Up Fragrance Free and Fresh Cucumber Scented baby wipes Products.

30. Defendant manufactures, markets, advertises, and sells the Up & Up Fragrance Free and Fresh Cucumber Scented baby wipes products. The Products are marketed as baby wipes, and that a consumer can use them as such.

31. More specifically, Defendant markets its Products as baby wipes that are "baby wipes", "soft and durable", "hypoallergenic", "pediatrician and dermatologist tested", "99% water formula" and "made with plant-derived ingredients". The label of the Products notes that the Products are safe and effective to be used as "baby wipes".

32. All of Defendant's baby wipes Products are manufactured in the same manner pursuant to Target's contracts and specifications.

33. Target's Up & Up branded baby wipes Products are attractive to consumers seeking baby Products that are less expensive than the national sellers while still providing a product

---

[4] Products & Services: Target Brands, TARGET, https://corporate.target.com/about/products-services/targetbrands#:~:text=up%26up%20is%20an%20everyday%20essentials,products%20and%20reformulated%20existing%20products (last visited June 12, 2026.)
[5] *Id*.

provided by the Target national name. Defendant's baby wipes Products are widely marketed, advertised, available, sold, and used by newborns, infants, young children, and adults (for their own use and for use by their children) throughout the United States and the world. The baby products industry is a highly competitive billion-dollar market. Many of Defendant's online and print advertisements and marketing materials featured newborns, infants, and children and colors meant to attract and appeal to their preferences, activities, and interests.

34. Consumers have become increasingly concerned about the products they use on their children. Companies, such as Defendant, have capitalized on consumers' desire for safe products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

35. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as harmful bacteria, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

36. The Products' packaging does not identify *B. cepacia* and *B. gladioli*. Indeed, *B. cepacia* and *B. gladioli* are not listed anywhere on the packaging, nor is there any warning about the inclusion (or even potential inclusion) of *B. cepacia* and *B. gladioli* in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *B. cepacia* and *B. gladioli*.

37. However, the Products contain, or are at risk of containing, *B. cepacia* and *B. gladioli*.

38. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing baby wipes and baby products for many years, including producing and manufacturing the contaminated Products.

39. Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *B. cepacia* and *B. gladioli* contamination, as well as the ability to test the Products for *B. cepacia* and *B. gladioli* contamination prior to releasing the Products into the stream of commerce. Such knowledge is solely within the possession of Defendant.

40. Accordingly, Defendant possesses superior and exclusive knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiffs and Class Members.

41. Defendant has a duty to provide consumers, like Plaintiffs and Class Members, with accurate information about the contents of the Products.

42. Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *B. cepacia* and *B. gladioli* is likely to continue to deceive and mislead reasonable consumers, as they have already deceived and misled Plaintiffs and the Class Members.

43. Defendant's misrepresentations and omissions were material and intentional because people are concerned with what is in the products that they use on their children and themselves. Consumers such as Plaintiffs and the Class Members are influenced by the marketing and advertising campaign, the Products' labels, and the listed ingredients. Defendant knows that if it had not omitted that the Products contained *B. cepacia* and *B. gladioli*, then Plaintiffs and the Class would not have purchased the Products, or, at the very least, would not have paid nearly as much for the Products.

44. Consumers rely on marketing and information in making purchasing decisions.

45. By omitting that the Products include *B. cepacia* and *B. gladioli* on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product that contained *B. cepacia* and *B. gladioli*.

46. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

47. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

48. In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for a product marketed without *B. cepacia* and *B. gladioli* over comparable products not so marketed.

49. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiffs and the Class Members in that they:

a. Paid a sum of money for Products that were not as Defendant represented;

b. Paid a premium price for Products based on Defendant's false and misleading misrepresentations;

c. Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

e. Were denied the benefit of the properties of the Products Defendant promised.

50. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiffs and the Class Members would not have been willing to purchase the Products.

51. Plaintiffs and the Class Members paid for Products that do not contain *B. cepacia* and *B. gladioli*. Since the Products do indeed or possibly contain *B. cepacia* and *B. gladioli*, the Products Plaintiffs and the Class Members received were worth less than the Products for which they paid.

52. Plaintiffs and the Class Members all paid money for the Products; however, Plaintiffs and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiffs and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

53. Plaintiffs and Class Members saw the Products' packaging prior to purchasing the Products. Had Plaintiffs and Class Members known the truth about the Products, i.e., that they do or possibly contain *B. cepacia* and *B. gladioli*, they would not have been willing to purchase them at any price, or, at minimum would have paid less for them.

## JURISDICTION AND VENUE

54. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than at least one Defendant, (1) this is a class action involving more than 100 class members; (2) Plaintiffs Finek

and O'Neal are citizens of Illinois, and Defendant Target is a citizen of Minnesota; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

55. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of Illinois, contracts to supply goods within the state of Illinois, and supplies goods within the state of Illinois. Defendant advertises and sells the Products to prospective customers in this State and District. Defendant distributed the Products to Illinois consumers. This distribution included distribution through Defendant's own website and brick and mortar stores, which sold the Products to Illinois consumers. Defendant marketed the Products on the internet, and Defendant expected and knew that Illinois consumers would purchase some of those Products in the state of Illinois. A substantial portion of the events giving rise to the claims alleged here occurred in this State

56. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b). A substantial portion of the events and conduct giving rise to the violations alleged in this Complaint occurred in this District.

## PARTIES

### Plaintiffs

57. Plaintiff Morgan Finek is a citizen and resident of Lombard, Illinois. During the applicable Class Period, Plaintiff Finek purchased and used Defendant's Products that possibly contained, or had the risk of containing. *B. cepacia* and *B. gladioli*. Plaintiff Finek had purchased the Products 11 times from Target in the past year. Most recently, Plaintiff Finek purchased her Products from a Target located in Lombard, Illinois on March 15, 2026. Prior to purchasing the Products, Plaintiff Finek saw the packaging of the Products.

58. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff Finek would not have been willing to

purchase the Products or pay as much for the Products. Plaintiff Finek purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained *B. cepacia* and *B. gladioli*. Alternatively, Plaintiff Finek paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff Finek was injured in fact and lost money as a result of Defendant's improper conduct.

59. Plaintiff Datreoni O'Neal is a citizen and resident of Bellwood, Illinois. During the applicable Class Period, Plaintiff O'Neal purchased and used Defendant's Products that possibly contained, or had the risk of containing, *B. cepacia* and *B. gladioli*. Plaintiff O'Neal was purchasing the Products on a monthly basis from Target. Most recently, Plaintiff O'Neal purchased her Products from a Target located in Hillside, Illinois on April 10, 2026. Prior to purchasing the Products, Plaintiff O'Neal saw the packaging of the Products.

60. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff O'Neal would not have been willing to purchase the Products or pay as much for the Products. Plaintiff O'Neal purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worthless because they possibly contained *B. cepacia* and *B. gladioli*. Alternatively, Plaintiff O'Neal paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff O'Neal was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

61. Defendant Target Corporation is a Minnesota corporation with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota, 55043. Target manufacturers, markets, distributes, and sells various baby wipes products, including Up&Up™ Fragrance Free and Fresh

Cucumber Scented baby wipes.

62. Defendant markets, advertises, sells, and distributes the Products throughout the United States and its territories. The Products, including those purchased by Plaintiffs and Class Members, are available for sale on Defendant's website (www.target.com) and in their brick-and-mortar stores throughout the United States. Defendant authorized the false, misleading, and deceptive marketing, advertising, distribution, and sale of its Products.

## CLASS ALLEGATIONS

63. Plaintiffs bring this matter on behalf of themselves and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

64. The Class is defined as all consumers who purchased the Products anywhere in the United States within the applicable statute of limitations (the "Nationwide Class").

65. Plaintiffs Finek and O'Neil also seek to represent a subclass of individuals who purchased any of the Products in the state of Illinois within the applicable statute of limitations (the "Illinois Subclass").

66. The Class and Illinois Subclass are referred to collectively throughout the Complaint as the Class.

67. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

68. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers in the Class and Subclasses who are Class Members as described above who have been damaged by Defendant's deceptive

and misleading practices.

69. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e. Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

70. Typicality: Plaintiffs are members of the Class and their respective Subclasses. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

71. Adequacy: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent, their consumer fraud

claims are common to all members of the Class, they have a strong interest in vindicating their rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

72. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and Subclasses. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

73. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

74. Accordingly, this Class Action lawsuit is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

## FIRST CAUSE OF ACTION
**Negligence**
**(*On Behalf of Plaintiffs and the Nationwide Class*)**

75. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

76. The conduct of Defendant in manufacturing, distributing, and selling the Products with the contamination of *B. cepacia* and *B. gladioli* constituted negligence in failing to reasonably

act in accordance with all applicable standards of care. Defendant owed Plaintiffs and Class members a duty not to disseminate a materially defective product. Defendant breached said duty of care when it nevertheless manufactured, distributed, and sold the Products with the contamination of *B. cepacia* and *B. gladioli* to consumers, including Plaintiffs.

77. Defendant also breached its duty of care by negligently failing to timely and/or adequately warn Plaintiffs and the Class of the contamination of *B. cepacia* and *B. gladioli*, even after Defendant was, or should have been, fully aware of the manufacturing defect in the Products.

78. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members suffered economic injury, entitling them to just compensation, as detailed below.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment**
**(*On Behalf of Plaintiffs and the Nationwide Class)***

79. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

80. Defendant was unjustly enriched at the expense of Plaintiffs and other Class Members in the form of monies that Plaintiffs and other Class Members paid for the Products.

81. Plaintiffs and Class Members seek restitution and disgorgement of such inequitably obtained monies.

**THIRD CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud Act**
**(815 ILCS 505/1 *et seq.*)**
**(*On Behalf of Plaintiffs Finek and O'Neil and the Illinois Subclass*)**

82. Plaintiffs Finek and O'Neil repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

83. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), §§ 815 ILCS 505/1, *et seq.*, prohibits the use of unfair or deceptive business practices in the conduct

of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

84. By the conduct described in detail above and incorporated herein, Defendant engaged in unfair or deceptive acts in violation of the Illinois Consumer Fraud Act.

85. Defendant's representations and omissions regarding the Products and their contamination with *B. cepacia* and *B. gladioli*, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Products.

86. Defendant intended for class members to rely on Defendant's omissions regarding the Products.

87. Plaintiffs and the other Illinois Subclass members justifiably acted or relied to their detriment upon the omissions of fact concerning the Products, as evidenced by Plaintiffs and the other Class members' purchases of Products.

88. Had Defendant disclosed all material information regarding the Products to Plaintiffs and Subclass members, Plaintiffs and Subclass members would not have purchased or the Products or would have paid less to do so.

89. Defendant's representations and omissions have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive members of the consuming public and members of the Subclass.

90. In addition to being deceptive, the business practices were unfair because Defendant knowingly sold Plaintiffs and Subclass members Products contaminated with *B. cepacia* and *B. gladioli*. The injuries to Plaintiffs and Subclass members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs and Subclass members or to competition under all of the circumstances. Moreover, in light of Defendant's exclusive knowledge of the *B. cepacia* and *B. gladioli* contamination, the injury is not one that Plaintiffs or Subclass members

could have reasonably avoided.

91. As a direct and proximate result of the unfair and deceptive trade practices, Plaintiffs and Subclass members have suffered ascertainable loss and actual damages. Plaintiffs and Subclass members who purchased the Products would not have purchased the Products, or, alternatively, would have paid less for them had the truth about the Products been disclosed.

92. Plaintiffs Finek and O'Neil and the Illinois Subclass seek all available relief under this statutory cause of action.

**<u>FOURTH CAUSE OF ACTION</u>**
**VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS 505/2 et seq.)**
**(*On Behalf of Plaintiffs, Individually, and on Behalf of the Illinois Subclass*)**

93. Plaintiffs, individually, and on behalf of the Illinois Class, re-allege and incorporate by reference all previous paragraphs as though fully set forth herein.

94. Defendant is a "person" as defined by 815 ILCS §§ 510/1(5).

95. Defendant engaged in deceptive trade practices in the conduct of its business, in violations of 815 ILCS §§ 510/2(a) by, without limitation, the following: (1) the Products' labels misrepresent and omits that the Products are contaminated with *B. cepacia* and *B. gladioli*. Defendant knew consumers would purchase the Products and/or pay more for them under the erroneous belief that the Products were safe to use. As a result of their deceptive acts and practices, Defendant has sold large quantities of the Products to consumers in Illinois. Absent Defendant's false, misleading, and/or deceptive conduct, Plaintiffs and the Class would not have purchased the Products or, at a minimum, would have paid less for them.

96. Defendant's representations were material because they were likely to deceive reasonable consumers.

97. Defendant's actions, as alleged herein, constitute unfair and deceptive acts and practices which were immoral, unethical, oppressive, and unscrupulous. The acts and practices alleged herein cause substantial injury to Plaintiffs and the Class that they could not reasonably avoid. The injuries to Plaintiffs and the Class outweighed any benefits to consumers or to competition Defendant continues to market and sell the Products with the false and misleading statements detailed herein.

98. As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and the Class have suffered, and will continue to suffer, injury, ascertainable losses of money and/or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

99. Plaintiffs and the Class are entitled to such injunctive relief to ensure that Defendant ceases its unlawful acts and practices.

100. Plaintiffs and the Class seek all relief allowed by law, including injunctive relief, damages, and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(*On Behalf of Plaintiffs and the Nationwide Class, or in the alternative the Illinois Subclass*)**

101. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

102. Plaintiffs bring this claim individually and on behalf of all similarly situated Class Members.

103. Defendant, as the designer, manufacturer, packager, labeler, marketer, distributor, and/or seller expressly warranted that the Products were fit for their intended purpose by expressly warranting that the Products were "baby wipes" and were safe to use for newborn, infants, young

children and adults. Additionally, Defendant warranted that the Products were "soft and durable", "hypoallergenic", "pediatrician and dermatologist tested", "99% water formula" and "made with plant-derived ingredients". The label of the Products notes that the Products are safe and effective to be used as "baby wipes"

104. Defendant made the foregoing express representation and warranty to all consumers, which became the basis of the bargain between Plaintiffs, Class Members, and Defendant.

105. In fact, the Products are not fit for such purpose because the express warranty is a false, deceptive, and misleading misrepresentation. The Products are contaminated, were not manufactured or tested in compliance with good manufacturing practices, and were not safe for human use, particularly for the use in children.

106. Defendant breaches their warranty and/or contract obligations by placing the Products into the stream of commerce and selling it to consumers. The fact that the Products have been recalled is an admission that the Products are unfit for their intended use and purpose, can not be sold as a baby wipes, and substantially and/or completely impairs the use and value of the Products.

107. Defendant was on notice of the aforementioned breaches of the above-described warranties via notice letter mailed on June 12, 2026. Likewise, Defendant was on notice on account of their own recall, consumer complaints and testing of the Products.

108. Plaintiffs and Class Members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they had known the truth about the Products. Plaintiffs and Class Members suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for

Products that did not conform to what Defendant promised in its Product promotion, marketing, advertising, packaging, and labeling, and they were deprived of the benefit of their bargain and spent money on Products that had less value than warranted or Products that they would not have purchased and used had they known the true facts about them. In addition, Plaintiffs and Class Members paid a premium for Products that did not conform to the Defendant's warranties.

**SIXTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(*On Behalf of Plaintiffs and the Nationwide Class, or in the alternative the Illinois Subclass*)**

109. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

110. Plaintiffs bring this claim individually and on behalf of all similarly situated Class Members.

111. Defendant specifically deals in baby wipes and other baby products, including through its manufacturing, distribution, and sale of the Up & Up baby wipes products.

112. Defendant, as the designer, manufacturer, packager, labeler, marketer, distributor, and/or seller of the Products, impliedly warranted that the Products were merchantable, *i.e.* the Products could be sold as baby wipes, and is fit for their ordinary purpose, *i.e.* the Products could be safely used as "baby wipes" and were safe to use on newborns, infants and children.

113. In fact, the Products are not fit for such purpose or merchantable because the Products are contaminated, were not manufactured or tested in compliance with good manufacturing practices, and were not safe for human use, particularly for the use in children that they were advertised to.

114. As a proximate result of Defendant's above-described breach of implied warranty, Plaintiffs and Class Members have sustained damages in an amount to be determined at trial.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representatives of the Class and Illinois Subclass under Rule 23 of the FRCP, and naming Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

(b) Declaring that Defendant is financially responsible for notifying Class Members of the pendency of this suit;

(c) Awarding compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(d) Ordering Defendant to pay pre-judgment interest on all amounts awarded;

(e) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys, experts, and reimbursement of Plaintiffs' expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated: June 12, 2026

Respectfully submitted,

**BRYSON HARRIS SUCIU & DEMAY PLLC**

*<u>/s/ Russell M. Busch</u>*
Russell M. Busch
979 Green Bay Road

Highland Park, IL 60035
Tel: (919) 926-7948
rbusch@brysonpllc.com

Nick Suciu III
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (616) 678-3180
nsuciu@brysconpllc.com

Trenton R. Kashima
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Tel: (212) 946-9389
tkashima@brysonpllc.com

Luis Cardona
900 West Morgan Street
Raleigh, NC 27603
Tel: (516) 862-0194
lcardona@brysconpllc.com

*On behalf of Plaintiffs and the Proposed Classes*